# ROGERS *v.* PECK.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF VERMONT.

No. 368. Argued November 6, 1905.—Decided November 27, 1905.

The Governor of Vermont has ample power to grant reprieves to persons sentenced to death for murder.

It is only where fundamental rights, specially secured by the Federal Constitution, are invaded that the Federal courts will interfere with a State in the administration of its law for the prosecution of crime, and it will not be presumed that if the freedom of a person properly convicted of murder and sentenced to death is improperly restricted that the state authorities will not afford the necessary relief.

Federal courts will not, by writs of *habeas corpus*, reverse the proceedings of state courts while acting within their jurisdiction under statutes which

do not conflict with the Federal Constitution, and the decision of the . state court that it is not necessary for the court to refix the day for execution of a person already sentenced by the court and reprieved by the Governor, where the reprieve definitely sets the day, is one wholly within state practice and is not controlled by Federal Constitution or laws.

Due process of law, guaranteed by the Fourteenth Amendment, does not · require the State to adopt a particular form of procedure, so long as the accused has had sufficient notice and adequate opportunity to defend himself in the prosecution, and the State may determine, free from Federal interference or control, in what courts crime may be prosecuted and by what courts the prosecutions may be reviewed.

Statutes should be given a reasonable construction with a view to make effectual the legislative intent; and the granting by the Governor of a State of a reprieve to a person sentenced to death in order that an appeal may be heard in this court, from an order of the District Court dismissing a petition in *habeas corpus* proceedings, is not such an interference by state authorities in a proceeding in the Federal courts in violation of § 766, Rev. Stat., as will make the subsequent confinement and execution of the prisoner a deprivation of liberty or life without due process of law.

THE appellant, Mary Mabel Rogers, having been convicted and sentenced in the county court of Bennington in the State of Vermont of the crime of murder in the first degree, filed her petition on June 19, 1905, for a writ of *habeas corpus* against the sheriff and superintendent of the state prison, in the District Court of the United States for the District of Vermont. The petition, having been heard, was denied on June 22, 1905. From that order an appeal was taken to this court.

The conviction of appellant was had at the December term, 1903, of the Bennington County Court, and she was sentenced to be confined at hard labor in the state prison at Winsor until the third day of November, 1904, and on and after that day to be kept in solitary confinement until February 3, 1905, on which day she should suffer the penalty of death by hanging. On the first day of February, 1905, the Governor of the State of Vermont reprieved the execution of sentence until June 2, 1905. On April 29, 1905, the appellant presented a petition for a new trial to two judges of the Supreme Court of Vermont. On May 5, 1905, the judges made an order allowing the petition for new trial to be filed, and fixed May 10 for the hearing

thereof. After hearing before the Supreme Court, sitting at Montpelier, Washington County, on May 30 an order was made dismissing the petition and refusing the new trial. *Rogers v. State,* 77 Vermont 454. On June 1, 1905, the execution of sentence was further reprieved by the Governor until June 23, 1905. Thereupon appellant filed her petition in the Federal Court for the writ of *habeas corpus,* which was dismissed, as heretofore stated. On the date of the dismissal of her petition (June 22, 1905), the Governor further reprieved the execution of the sentence until December 8, 1905. The appeal to this court was allowed on June 22, 1905. The petitioner (appellant) averred that, by the various proceedings in the state courts and her incarceration in the prison in solitary confinement, she has been restrained of her liberty and is about to be executed without due process of law, guaranteed for her protection by the Fourteenth Amendment to the Constitution of the United States.

*Mr. T. L. Jeffords* and *Mr. T. W. Moloney,* with whom *Mr. F. M. Butler* was on the brief, for appellant:

As to solitary confinement:

Whenever a citizen is denied a right guaranteed by the Constitution, or subjected to a penalty forbidden by it, the Federal courts may grant relief. *Medley's Case,* 134 U. S. 160; *Ex parte Royall,* 117 U. S. 241.

As to time of execution under §§ 1997–1999, state statutes, the court should have appointed a time for the execution after the reprieve and failing to do, subsequent proceedings are without due process of law. *Hurtado v. California,* 110 U. S. 516.

A Federal court has jurisdiction to discharge from custody of state officials any person restrained of liberty in violation of the Constitution of the United States. *Minnesota v. Brundage,* 188 U. S. 499; *Markuson v. Boucher,* 175 U. S. 184; *Leeper v. Texas,* 139 U. S. 462.

This is a case of peculiar urgency as the error is being com-

mitted since judgment was rendered and error is not assigned
to the court but *habeas* proceedings are resorted · to to reach
state officers acting improperly. *Baker* v. *Grice,* 169 U. S.
284; *Tinsley* v. *Anderson,* 171 U. S. 101; *Light Co.* v. *Newport,*
151 U. S. 527; *Pepke* v. *Cronan,* 155 U. S. 100; *Re Nagle,* 135
U. S. 1; *Re Loney,* 134 U. S. 372.

While the Constitution neither grants nor forbids the Gov-
ernor of a State the right to stay execution of a sentence, as
held in *Storti* v. *Massachusetts,* 183 U. S. 138, it does forbid
the Governor from executing a person without a valid sen-
tence of a court.

The court in which the trial was had and the one in which
the sentence was renewed were not constituted according to
the state constitution, §§ 989–993, 1007–1012. State statutes
and the statute establishing those courts are unconstitutional.
Const., Vermont, ch. 2, p. 4; *State* v. *Peterson,* 41 Vermont, 515.

Courts illegally constituted, whose judgments and sentences
are void, do not furnish the citizen with due legal process.
*Rogers* v. *Alabama,* 195 U. S. 257. The person convicted could
not waive any of her rights in a capital case. *People* v. *Barberi,*
149 N. Y. 256.

The petitioner is improperly detained; the reprieve of the
Governor since the commencement of these proceedings is an
unlawful interference therewith under § 756 Rev. Stat. and
the detention and sentence thereunder are void and illegal.

*Mr. Clarke C. Fitts,* Attorney General of the State of Ver-
mont, for appellee:

As to power of the Governor to grant reprieves see § 11, ch. 2,
Const., Vermont, and amendments.

There is no statute of the State relating to the subject. An
averment that appellant is detained in violation of the Con-
stitution and laws of the United States, and is restrained in
violation of the Constitution of the United States is merely an
averment of a conclusion of law and not of fact, and is not
sufficient to give the court jurisdiction. *Sawyer* v. *Piper,* 189

U. S. 154; *Whitten* v. *Tomlinson,* 160 U. S. 231; *Craemer* v. *Washington,* 168 U. S. 124; *Ex parte Cuddy,* 131 U. S. 280; *Kohl* v. *Lehlback,* 160 U. S. 293.

The granting of a reprieve in Vermont, is an executive function. It is favor to the prisoner. *In re Cross,* 146 U. S. 277.

The Federal Constitution neither grants nor forbids to the Governor of a State the right to stay the execution of a sentence. *Storti* v. *Massachusetts,* 183 U. S. 141.

The exercise of the executive power in granting a commutation, respite, or reprieve not being in any sense a judicial proceeding, notice is not a matter of right. It rests wholly within the discretion of the power granting the favor. *Holmes* v. *Jennison,* 14 Pet. 598, opinion of Catron, J.

Notice is not necessary. The authority of the Governor to fix a certain date for the execution to take place is an incident to the power to grant reprieves. *New Jersey* v. *Heller,* 63 N. J. L. 105.

The reprieve is not a new sentence, and the execution under it is not by way of a new sentence, but by reason of the expiration of a temporary suspension of the original sentence. *Ex parte Fleming,* 60 Mississippi, 910.

There are no decisions of the courts of Vermont upon this question, but long continued practice of the executive department of the state government has established this course of procedure. It was last exercised, we believe, by Governor Proctor, in the case of Phair in 1879, and the executive records show numerous instances of reprieves for a short length of time to expire sooner than the end of the next session of assembly.

As to the failure, if any, of the state Supreme Court to appoint a time for executing the sentence, that is a matter of state procedure. *Lambert* v. *Barrett,* 159 U. S. 663; *Brown* v. *New Jersey,* 175 U. S. 174; *Baldwin* v. *Kansas,* 129 U. S. 57; *Louisville & Nashville* v. *Schmidt,* 177 U. S. 230.

Any question relating to procedure in the state court cannot be raised by *habeas corpus.* A writ of error is the proper remedy to review judgments and practice of state courts. *In re*

*Frederich,* 149 U. S. 70, 78; *Markuson* v. *Boucher,* 175 U. S. 184; *In re Schneider,* 148 U. S. 162; *In re Duncan,* 139 U. S. 479.

As to appellant's complaint that her rights under the Constitution of the United States have been infringed because she has "been denied the right of appeal for a correction of errors of the trial court." As there is no Supreme Court of the State of Vermont to which she has the right to appeal for a correction of the errors which she alleges occurred on her trial in County Court, the contention does not involve a Federal question. See cases cited *supra* and *Porter* v. *Foley,* 24 How. 415; *Tuttle* v. *Railroad Co.,* 168 U. S. 131.

But the point is not well taken in fact.

A State may provide one judicial system for one county and another for an adjoining county, so long as it does not abridge the privileges and immunities of citizens of the United States, nor deprive any person of his rights without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws in the same county. *Missouri* v. *Lewis,* 101 U. S. 33.

The manner of appellant's confinement is not a Federal question nor is it before this court. It is not the duty of this court to consider questions not raised by the appellant in her petition for a writ. The statute requires her to fully set forth the facts concerning her detention. Rev. Stat. § 754; *Kohl* v. *Lehlback,* 160 U. S. 296; *Ex parte Royall,* 117 U. S. 241; *Craemer* v. *Washington,* 168 U. S. 124.

There is no definition of the term "solitary confinement" in the Vermont law, or in the decisions of the Vermont courts. *Medley's Case,* 134 U. S. 160, relates to an *ex post facto* law and does not apply to this case, and see *McElvaine* v. *Brush,* 142 U. S. 155.

In such a case as this the infliction of solitary confinement by the second sentence is not in itself a distinct and separate punishment. *Murphy* v. *Massachusetts,* 177 U. S. 155.

The reprieve contained no order as to the manner of confinement. Neither the constitution nor the statute of Vermont

make any regulation in such a case. If, then, the superintendent of the prison held her in solitary confinement, which was unlawful, that restraint was not an act of law, but his illegal act, and the appellant's rights would be against him. This court has nothing to do with the wrongs which may have been inflicted by an individual upon the appellant. It is only to inquire into what the *State* has done. *Murphy* v. *Massachusetts, supra; People* v. *Trezza,* 128 N. Y. 536.

Appellant raised no Federal question in her trial, made no motion in the state Supreme Court for a stay of execution nor to be re-sentenced, or sought relief in the state court for the alleged wrong she claims to be suffering, by being held under the Governor's reprieve. She should have first gone there for protection. Cases cited *supra* and *Pepke* v. *Cronan,* 155 U. S. 100.

Under the writ of *habeas corpus,* the court can exercise no appellate jurisdiction over the proceedings of the trial court or courts of the State, nor review their conclusions of law or fact and pronounce them erroneous. See also *In re Frederich,* 149 U. S. 70, 78; *Ex parte Siebold,* 100 U. S. 371; *Ex parte Curtis,* 106 U. S. 371; *Ex parte Yarbrough,* 110 U. S. 651; *Ex parte Wilson,* 114 U. S. 417; *Ex parte Royall,* 117 U. S. 241; *Stevens* v. *Fuller,* 136 U. S. 468.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

For the reversal of the judgment and order of the District Court of the United States, discharging the writ and remanding her to the custody of the Vermont authorities, appellant relies upon the following specifications of error:

"First. Because the petitioner was and is deprived of her liberty by the State, and subjected to the punishment of solitary confinement without any statute authorizing such punishment, and without any sentence of any court directing such punishment, and therefore without due process of law.

"Second. Because the Supreme Court of Vermont, having taken jurisdiction of the petition for a new trial, and having failed to comply with the requirements of law in respect of ordering a stay of execution and fixing the time for the execution of the petitioner, has failed to fix a day for the execution, and the Governor of Vermont has no right or authority to fix such a day, and the petitioner is being held to be executed in accordance with a precept not authorized by law, and which is not in and of itself due process of law.

"Third. Because the State of Vermont, having failed to maintain an appellate court in the county of Bennington, as required by its constitution, has deprived the relator of the opportunity to be heard by a court of competent jurisdiction, and thus deprived her of due process of law.

"Fourth. Because the Governor of Vermont, having issued his order requiring execution of the petitioner on December 8, while proceedings were pending in the courts of the United States for her relief on *habeas corpus*, said order of the Governor is to be deemed null and void, and the petitioner should be released from custody thereunder."

We shall notice these several assignments in the order named.

As to solitary confinement of the prisoner, it is not contended that she was not properly sentenced in this respect by the court of original jurisdiction. The statute of the State of Vermont (Vt. Stat. § 2007) provides:

"When execution is not to take place until after six months from date of sentence, the court at the same time shall sentence the respondent to hard labor in the state prison or house of correction until three months before the time fixed in the sentence of death for the execution thereof, and shall also sentence him to solitary confinement in the state prison or house of correction from the expiration of the sentence to hard labor until the time of execution."

The court in sentencing the appellant to be hanged on the first Friday of February, 1905, in pursuance of this statute, imposed a sentence of three months at hard labor until within

three months of the time fixed for the execution, and three months of solitary confinement next before the day of execution.

The complaint in this behalf is not of a sentence alleged to have been imposed in violation of law, but because of the manner in which the appellant has been kept in confinement in prison after the original day fixed for the execution of the sentence. She alleges that she is suffering solitary confinement without due process of law, within the meaning of the Fourteenth Amendment. If she is held in such confinement by the state authorities—which the record does not disclose, the confinement shown being close rather than solitary—we are of the opinion that no case within the Federal protection is made. *Medley's Case,* 134 U. S. 160, is cited, and relied upon by counsel. That case presented an entirely different question. It was there held that a sentence under a state law passed after the commission of felonious homicide, affixing the punishment of solitary confinement for a period of six months in addition to the death penalty, was an *ex post facto* law within the meaning of section 10, Article I, of the Federal Constitution, and therefore void. In *Rooney v. North Dakota,* 196 U. S. 319, it was held that a statute which substituted close confinement in the penitentiary for a period before execution longer than had theretofore been authorized for confinement in jail, was not an *ex post facto* law. In the present case no sentence or law is being violated, and, assuming the appellant to be held in solitary confinement, there is nothing to prevent her having relief at the hands of the state authorities, and nothing to show that the appellant is being deprived of her liberty in violation of any right secured to her by the Federal Constitution.

The extent of the right of the Federal courts to interfere by the writ of *habeas corpus* with the proceedings of courts and other authorities of a State is carefully defined by statute. When a prisoner is in jail he may be released upon *habeas corpus* when held in violation of his constitutional rights. Rev. Stat. § 753. In the case before us, assuming for this purpose

that the appellant has properly been convicted and sentenced
of one of the gravest offences known to the law, she is properly
restrained of her liberty while in custody, for the purpose of
making the sentence effectual. If her custodian is improp-
erly restricting her freedom more than is necessary or legal
under state law, there is no reason to suppose that the state
authorities will not afford the necessary relief. And certainly
there is nothing in this branch of the case to justify Federal
interference with the local authority entrusted with the keep-
ing of the prisoner.

The reluctance with which this court will sanction Federal
interference with a State in the administration of its domestic
law for the prosecution of crime has been frequently stated in
the deliverances of the court upon the subject. It is only where
fundamental rights, specially secured by the Federal Constitu-
tion, are invaded, that such interference is warranted. *Ex
parte Reggel,* 114 U. S. 642; *In re Converse,* 137 U. S. 624; *Allen
v. Georgia,* 166 U. S. 138; *Hodgson v. Vermont,* 168 U. S. 262;
*Brown v. New Jersey,* 175 U. S. 172; *In re Frederich,* 149
U. S. 70.

As to the second assignment of error, arising from the failure
of the Supreme Court of Vermont to grant a stay and fix a time
for execution of the sentence when it entertained and denied
the petition for a new trial, at the time of the ruling in this be-
half the prisoner had been reprieved until June second. The
decision was made before that day had arrived (May 30). It
is difficult to perceive any good reason for requiring the court
to fix a time for sentence which was already definitely set by
the reprieve of the Governor. It was the opinion of the Su-
preme Court of Vermont that it was not required to do so, and
this decision cannot be reversed by Federal authority. It has
been so frequently ruled by this court, that it is scarcely nec-
essary to cite cases, that the Federal courts will not by writs of
*habeas corpus* undertake to reverse the proceedings of the state
courts, while acting within their jurisdiction under statutes
which do not conflict with the Federal Constitution. *In re*

*Shibuya Jugiro*, 140 U. S. 291; *In re Wood*, 140· U. S. 278; *Andrews* v. *Swartz*, 156 U. S. 272.

Whether, when the Governor had issued a reprieve which carried the date of execution beyond the time of decision in the Supreme Court, such action rendered unnecessary the fixing of a new day for execution, was purely a question of state practice, not controlled by the Federal Constitution or laws, and upon which the state court had final jurisdiction. *Lambert* v. *Barrett*, 159 U. S. 660.

As to the third assignment, that the State of Vermont had failed to maintain an appellate court in the county of Bennington as required by its constitution, and thereby deprived the appellant of an opportunity to be heard in review by a court of competent jurisdiction; the State has the right to determine for itself the courts in which crime may be prosecuted, and the appellate tribunals, if any, to which such causes may be carried for review. *McKane* v. *Durston*, 153 U. S. 684, 687. Due process of law, guaranteed by the Fourteenth Amendment, does not require the State to adopt a particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution. *Louisville & Nashville Railroad Company* v. *Schmidt*, 177 U. S. 230; *Wilson* v. *North Carolina*, 169 U. S. 586.

The appellant had the right, by the laws of the State, to have a jury trial before a competent court. Upon exceptions, duly and seasonably taken for errors of law alleged to have occurred upon the trial, the appellant had a right to review in the Supreme Court (Vt. Stat. § 1961), whether this court should be held in each county or at the state capital for all the counties, is entirely a question of state procedure, presenting no Federal question for review here.

The fourth assignment of error calls for the consideration of § 766, Rev. Stat. of the United States, as amended. 27 Stat. 751. This section provides in substance that any proceeding against a person imprisoned or confined or restrained

of his liberty, in any state court, or by authority of any State, pending the proceedings or appeal in *habeas corpus* cases in the Federal courts, and until final judgment therein, and after final judgment of discharge, shall be null and void. The contention for the appellant in this behalf is that the order further staying execution of the sentence by the Governor of Vermont, made on June 22, 1905, granting a reprieve until December 8, of the same year, was made pending the *habeas corpus* proceedings in the Federal courts, and is therefore void. The order of reprieve was made on June 22, the day upon which the writ was dismissed and appeal allowed to this court, just after the petitioner was remanded to the custody of the state authorities and very shortly before the appeal here was allowed. The power of the Governor of Vermont to grant reprieves in cases of murder is ample. Constitution of Vermont, chap. 2, § 11, Amendment, Art. 8. And such power is neither granted nor withheld by the Federal Constitution. *Storti* v. *Massachusetts,* 183 U. S. 138.

It is perfectly apparent that it was exercised in the present instance for the very purpose of permitting the prisoner to appeal to this court, and not to render ineffectual or in anywise interfere with the jurisdiction and orders of the Federal courts. Statutes should be given a reasonable construction with a view to make effectual the legislative intent in their enactment. The object of this statute is apparent. It requires the state courts and authorities to make no order and entertain no proceeding which shall interfere with the full examination and final judgment in a *habeas corpus* proceeding in the Federal courts, *In re Shibuya Jugiro,* 140 U. S. 291, and in no wise to interfere with the judgment if it shall result in a restoration of the petitioner's freedom when wrongfully imprisoned or restrained. The proceedings annulled are "against the person so imprisoned," etc. The statute aims to entirely prevent action which shall interfere with the perfect freedom of the Federal courts to inquire into the case and make such orders and render such judgment as they shall see fit.

The reprieve granted has had the effect doubtless intended by the chief executive of the State, to allow the cause to be heard upon appeal in this court. To denominate such an order a proceeding against the prisoner would do violence to the terms of the statute and defeat, not carry out, its purpose.

We are unable to find that the appellant has sustained any violation of rights secured by the Federal Constitution by the proceedings of the executive or judicial departments of the State of Vermont. The final order is affirmed, mandate to issue at once.